FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 30, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SUSAN L.,[1] | No. 2:18-cv-00295-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 14, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 16. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

7.  The Court, having reviewed the administrative record and the parties' briefing,

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

Motion, ECF No. 14, and grants Defendant's Motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 11, 2014, Plaintiff applied for Title II disability insurance benefits, alleging a disability onset date of February 15, 2007. Tr. 199-200. The application was denied initially, Tr. 141-43, and on reconsideration, Tr. 146-47. Plaintiff appeared at hearings before an administrative law judge (ALJ) on August 25, 2015, Tr. 73-97, and on November 5, 2015, Tr. 98-124. On December 23, 2015, the ALJ denied Plaintiff's claim. Tr. 54-72.

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of February 15, 2007 through her date last insured of September 30, 2012. Tr. 59. At step two, the ALJ found Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, status post bilateral carpal tunnel releases in 2008 and 2009, and degenerative disc

ORDER - 6

disease of the lumbar spine.  Tr. 59.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  Tr. 60.  The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] can occasionally climb ladders, ropes, or scaffolds; she can perform frequent, not constant, fine and gross manipulation.

Tr. 60.

At step four, the ALJ found Plaintiff was capable of performing past relevant work as an office manager and a hotel clerk.  Tr. 65.  Although the ALJ found Plaintiff capable of performing past relevant work, the ALJ continued to step five and determined that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as furniture rental consultant and counter clerk.  Tr. 66.  The ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from February 15, 2007, the alleged onset date, through September 30, 2012, the date last insured.  Tr. 66.

On May 23, 2017, the Appeals Council denied review, Tr. 41-45, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability income benefits under Title II of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ fulfilled her duty to fully and fairly develop the record;

2. Whether the ALJ properly assessed Listing 1.02B at step three;

3. Whether the ALJ properly weighed the medical opinion evidence;

4. Whether the ALJ properly considered Plaintiff's symptom claims; and

5. Whether the ALJ properly considered lay witness statements.

ECF No. 14 at 2.

**DISCUSSION**

**A. ALJ's Duty to Develop the Record**

Plaintiff contends the ALJ erred by failing to fully and fairly develop the record. ECF No. 14 at 4.

An ALJ has an independent duty to fully and fairly develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty to develop the record is triggered if the evidence is ambiguous or the record is inadequate to make a decision. *Id*. This duty extends to the represented as well as to the unrepresented claimant. *Id*. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts. *Id*. The ALJ

ORDER - 8

may develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. *Id.* (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998)).

Plaintiff faults that ALJ for failing to develop the record, arguing that the record indicated there was additional evidence that was never obtained. ECF No. 14 at 5. The duty to develop the record is triggered if the evidence is ambiguous or the record is inadequate to make a decision. *Tonapetyan*, 242 F.3d at 1150. Here, there is no evidence to suggest that the record was ambiguous. Further, at the beginning of the second hearing the ALJ stated that, at the time of Plaintiff's first hearing in August 2015, "there were not enough records in this case for [the ALJ] to make a decision," but noted that additional records had been received. Tr. 100. After the second hearing in November 2015, the ALJ left the record open for Plaintiff to submit any additional records. Tr. 123. Additional records were received and the ALJ issued a decision in December 2015 without a finding that the record was inadequate to make a decision.

Plaintiff also contends that the ALJ failed to satisfy her heightened duty to fully and fairly develop the record, asserting that she was not represented by counsel at either of her two hearings. ECF No. 14 at 5. However, the ALJ made reasonable efforts to obtain Plaintiff's relevant medical records. *See* 20 C.F.R. §

404.1512; *see, e.g.,* Tr. 73-96 (August 25, 2015: during Plaintiff's first hearing, the ALJ heard testimony from Plaintiff and a medical expert, realized that certain records were missing, invited Plaintiff to provide additional records, provide a list of missing records, or sign another medical release, and kept the record open to receive additional records); Tr. 100, 103 (in between Plaintiff's two hearings, the ALJ obtained additional records, telling Plaintiff at the second hearing, "[W]e've been trying to get records since our last hearing, and every provider that we've requested records from sent what they had, or told us that they didn't have any records…"); Tr. 98-123 (November 5, 2015: during Plaintiff's second hearing, the ALJ heard additional testimony from Plaintiff, another medical expert, and a vocational expert); Tr. 123 (after Plaintiff's second hearing, the ALJ once again left the record open for Plaintiff to submit any additional records); Tr. 123 (during the second hearing, Plaintiff agreed to submit any additional documents); Tr. 72, 54-67 (after the second hearing, the ALJ added six more exhibits to the record before issuing her decision). Based on this record, the ALJ fulfilled her duty to fully and fairly develop the record by holding two hearings, keeping the record open after both hearings so that the record could be supplemented with medical

evidence, and requesting Plaintiff's medical records from several different facilities. *See Tonapetyan,* 242 F.3d at 1150.

**B.     Step Three**

Plaintiff contends the ALJ erred by failing to properly assess whether Plaintiff's carpal tunnel syndrome met or equaled Listing 1.02B. ECF No. 14 at 7.

At step three of the sequential process, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525. To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim. 20 C.F.R. § 404.1525(d). If a claimant meets the listed criteria for disability, she will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ must receive into evidence during the administrative hearing the opinion of the testifying medical examiner on the issue of listing equivalence and give appropriate weight to that opinion. SSR 96-6p (eff.

July 2, 1996, to March 27, 2017).  The claimant bears the burden of establishing

she meets a listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Listing 1.02 is satisfied by a gross anatomical deformity, e.g., subluxation,

contracture, bony or fibrous ankylosis, instability, and chronic joint pain and

stiffness with signs of limitation of motion or other abnormal motion of the

affected joint(s).  20 C.F.R. pt. 404, subpt. P., app. 1, listing 1.02.  There must be

findings on appropriate medically acceptable imaging of joint space narrowing,

bony destruction, or ankylosis of the affected joint(s).  *Id.*  Paragraph B covers the

involvement of one major peripheral joint in each upper extremity, i.e., shoulder,

elbow, or wrist-hand, resulting in inability to perform fine and gross movements

effectively.  *Id.*  The "inability to perform fine and gross movements effectively,"

as used in Listing 1.02B, requires an "extreme loss of function in both upper

extremities" such that the individual is not "capable of sustaining such functions as

reaching, pushing, pulling, grasping, and fingering to be able to carry out activities

of daily living."  *Id.* § 1.00B.2.c.  For example, where the individual is unable to

perform the activities of preparing a simple meal, managing personal hygiene,

sorting and handling papers, or placing files in a cabinet above waist level, the

individual is unable to perform fine and gross movements effectively.  *Id.*  If a

claimant has a combination of impairments, not one of which meets a listing, the

Commissioner compares the findings with those for closely analogous listed

ORDER - 12

impairments.  Soc. Sec. Rlg. 17-2p.  "If the findings related to the impairments are at least of equal medical significance to those of a listed impairment," the combination of impairments is found to be medically equivalent to that listing.  *Id.*

At step three, the ALJ found that Plaintiff's right carpal tunnel syndrome and status post bilateral carpal tunnel releases were not severe enough to meet or equal the criteria for a musculoskeletal system impairment under Section 1.02B, as Plaintiff was not unable to perform fine and gross movements.  Tr. 60.  Plaintiff argues that the ALJ made a conclusory finding at step three by simply stating that Plaintiff "is not unable to perform fine and gross movements," and failing to provide a reference to the record or an explanation as to how this finding was made.  ECF No. 14 at 9 (citing Tr. 60).  However, although the ALJ's analysis was not included in the step three section of the decision, the ALJ fully summarized Plaintiff's medical records regarding her carpal tunnel syndrome and releases in other parts of the decision.  Tr. 62-65; *see Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (ALJ is not required to discuss and evaluate the evidence that supports her conclusion under the heading "Findings").  The ALJ noted that Plaintiff's activities of daily living, including weeding, watering plants, folding laundry, dusting, and preparing food showed she was capable of frequent manipulative activity.  Tr. 61 (citing Tr. 228-31).  The ALJ stated that initial objective evidence showed Plaintiff had moderate carpal tunnel syndrome on the left and severe on the

right in 2008, but physical therapy after her right carpal tunnel release in January

2009 and left carpal tunnel release in September 2009 revealed Plaintiff was

capable of reclaiming a significant level of functioning. Tr. 62. Moreover, the

ALJ noted that electrodiagnostic evidence obtained after Plaintiff's bilateral

releases showed few remaining abnormalities. Tr. 62. The ALJ stated that by June

2009, Plaintiff had full range of motion in her right hand with remaining incisional

tenderness and pillar pain, and on February 3, 2010, Plaintiff's physical therapist

reported that her range of motion was within functional limits. Tr. 62 (citing Tr.

448, 487). The ALJ provided a detailed summary of the examination results by

two separate teams of independent medical evaluators and noted that both teams

reported Plaintiff was capable of a significant degree of functioning. Tr. 62.

Further, the ALJ assigned great weight to the medical opinion of Dr. Vu, an

impartial medical expert who reviewed the entire record available at Plaintiff's

second hearing, up to Exhibit 12F, and testified that Plaintiff did not meet or equal

Listing 1.02. Tr. 62. The ALJ referenced Dr. Vu's opinion that Plaintiff could

frequently perform both fine[3] and gross manipulation bilaterally. Tr. 63. The ALJ

---

[3] The Court notes that there is a typographical error in the ALJ's decision. Tr. 63.

The ALJ stated that Dr. Vu testified Plaintiff could "frequently perform both

*frequent* and gross manipulation bilaterally." Tr. 63 (emphasis added). However,

stated she had reviewed the records that Plaintiff submitted after the second hearing and found them to be consistent with the prior medical evidence of record. Tr. 63. Finally, the ALJ provided a detailed summary of the opinion evidence. Tr. 63-65. The medical records, as thoroughly discussed by the ALJ, demonstrate that Plaintiff's right carpal tunnel syndrome and status post bilateral carpal tunnel releases did not meet or equal Listing 1.02B because Plaintiff was not unable to perform fine and gross movements effectively and there was no extreme loss of function in both upper extremities. 20 C.F.R. pt. 404, subpt. P, app 1, § 1.00B.2.c.

Plaintiff argues there is evidence that she met or equaled Listing 1.02B for at least 12 months during the relevant period. ECF No. 14 at 8-9; *see, e.g.,* Tr. 474 (May 2008: objective testing confirmed median motor and sensory distal latency delays, indicating bilateral carpal tunnel, moderate on the left and severe on the right); Tr. 443 (December 2008: Plaintiff had bilateral numbness, positive Tinel's and Phalen's, and carpal compression); Tr. 430-31, 438-39, 445 (January 2009: Plaintiff had right carpal tunnel release, but continued to have tightness, tenderness, and decreased strength); Tr. 422 (May 2009: doing dishes and other activities of daily living caused additional tightness and tenderness); Tr. 486

---

Dr. Vu testified that Plaintiff could frequently perform both *fine* and gross manipulation bilaterally. Tr. 105-06.

(August 2009: Plaintiff had plateaued and still had difficulty opening bottles or driving for long periods of time); Tr. 451 (September 2009: Plaintiff had left carpal tunnel release); Tr. 396, 497 (March and April 2010: physical therapist's functional capacity assessment found that Plaintiff could still seldom perform fine manipulation and treating nurse practitioner reached similar findings). Plaintiff contends she has reported difficulty dressing, Tr. 228, 260; shaving, Tr. 228, 267; opening jars, Tr. 293; bathing, Tr. 260; and writing letters, Tr. 293. ECF No. 14 at 9. Plaintiff also asserts that her daughter stated it could be difficult for Plaintiff to perform some personal care, cut food on her plate, use a regular can opener, do yard work or crafts, reach, or complete tasks. ECF No. 14 at 9 (citing Tr. 248). However, "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Tackett*, 180 F.3d at 1100. Rather, a claimant "must meet *all* of the specified medical criteria" of a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id*. To meet the elements of Listing 1.02B, Plaintiff had to prove that her carpal tunnel syndrome left her unable to "perform fine and gross movements effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02(B). She had to demonstrate "extreme loss of function of both upper extremities," such as an inability to prepare a simple meal and feed herself, care for her personal hygiene, sort and handle papers or

files, and place files in a file cabinet at or above her waist level. *Id*; §

1.02(B)(2)(c). As the ALJ noted, the record showed that Plaintiff's activities

included weeding, watering plants, folding laundry, dusting, and preparing food.

Tr. 61 (citing Tr. 228-31). The ALJ's determination that Plaintiff's impairments

did not meet or equal Listing 1.02B was supported by substantial evidence in the

record as a whole. Therefore, Plaintiff has not identified an error in the ALJ's step

three finding.

## C.    Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Minh D.

Vu, M.D., William Stump, M.D., Chester McLaughlin, M.D., Wendy Hughes,

ARNP, Keith Franzen, PT, and Henry Lin, M.D. ECF No. 14 at 10-19.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight

to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th 1996)).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. § 404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 404.1513(d)

(2013).[4]  However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  An ALJ is obligated to give reasons germane to "other source" testimony before discounting it.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

First, Plaintiff argues that the record appears incomplete, making the ALJ's opinion assessment unsustainable on review.  ECF No. 14 at 10.  As discussed *supra*, Plaintiff's argument is without merit as the ALJ satisfied her duty to fully and fairly develop the record.  *See Tonapetyan*, 242 F.3d at 1150.

### 1.  Dr. Vu

Minh D. Vu, M.D., an impartial medical expert, reviewed Plaintiff's entire medical record that had been submitted at the time of Plaintiff's second hearing, up to Exhibit 12F.  Tr. 101-02.  Dr. Vu testified that Plaintiff did not meet or equal Listing 1.02B.  Tr. 105.  Dr. Vu opined that Plaintiff would be limited to light

---

[4] Prior to March 27, 2017, the definition of a medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, were located at 20 C.F.R. § 404.1513(d).

exertional level work, and that she could frequently perform both fine and gross manipulation bilaterally, along with a number of other postural limitations.  Tr. 105-06.  The ALJ gave Dr. Vu's opinion great weight.  Tr. 64.

Plaintiff contends the ALJ erred by giving great weight to the opinion of Dr. Vu, a reviewing physician, and little weight to Plaintiff's treating and examining providers, ARNP Hughes and Mr. Franzen.  ECF No. 14 at 15-17.  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a nonexamining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the nonexamining doctor's opinion.  *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).  Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of

ORDER - 20

contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

The ALJ found that the opinion of Dr. Vu was consistent with the objective medical evidence and the opinions of the independent medical evaluators. Tr. 64-65. Plaintiff suggests the ALJ should have credited the opinions of Plaintiff's treating nurse practitioner and examining physical therapist over the opinion of the reviewing doctor. However, as discussed *infra*, the ALJ provided legally sufficient reasons for giving less weight to the opinions of the treating and examining providers and for giving more weight to Dr. Vu's opinion.

### 2. Drs. Stump and McLaughlin

On July 19, 2010, William Stump, M.D. and Chester McLaughlin, M.D. conducted an independent medical evaluation of Plaintiff. Tr. 295-300. The doctors reported that Plaintiff had a decreased grip strength bilaterally, with the most marked involvement of flexion and extension of both thumbs. Tr. 299. Drs. Stump and McLaughlin diagnosed Plaintiff with bilateral carpal tunnel syndrome, more severe on the right than the left, status post right carpal tunnel release with mild residual discomfort in the right upper extremity, as well as status post left carpal tunnel release with persistent pain and weakness, but with normalization of the two-point discrimination in the fingers but not the thumb. Tr. 300. They also diagnosed Plaintiff with persistent discomfort in both upper extremities with

ORDER - 21

limitation to motor examination.  Tr. 300.  On August 20, 2010, Drs. Stump and

McLaughlin provided an addendum to their opinion and reported that Plaintiff did

not have a ratable impairment in the left upper extremity, and the basis for the

decreased strength in her left hand was "likely perceived discomfort rather than

neurological dysfunction."  Tr. 301-02.  On September 9, 2010, Drs. Stump and

McLaughlin opined that Plaintiff could perform her previous job as an assistant to

the office manager, a light exertional level job, with a restriction to only occasional

repetitive hand use.  Tr. 304.  They also opined that Plaintiff could perform her

previous job as an evening clerk, a light exertional level job, without any

modifications.  Tr. 305.

The ALJ gave great weight to the opinion of Drs. Stump and McLaughlin

but failed to account for in the RFC, or discuss reasons for rejecting, their opinion

that Plaintiff was limited to occasional, rather than frequent, repetitive hand use.

Tr. 64.  Because Drs. Stump and McLaughlin's assessment regarding Plaintiff's

hand use limitation was contradicted by the nonexamining opinion of Dr. Vu, Tr.

105-06, the ALJ was required to provide specific and legitimate reasons for

discounting the opinion of Drs. Stump and McLaughlin as to Plaintiff's limit to occasional repetitive hand use.[5]  *Bayliss*, 427 F.3d at 1216.

The ALJ's rationale for formulating Plaintiff's RFC to include frequent fine and gross manipulation while crediting the opinion of Drs. Stump and McLaughlin is absent, and therefore unsupported in this case.  The ALJ is required to set forth the reasoning behind his or her decisions in a way that allows for meaningful review.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ).  "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).  Plaintiff argues that the record does not support the ALJ's RFC, as the opinion of Drs. Stump and McLaughlin as to Plaintiff's hand use limitation was repeated in other locations in the record.  ECF No. 14 at 13-14, 17-18; *see, e.g.,* Tr. 317, 321 (Dr. James opined that Plaintiff could return to her past work as assistant to the office manager and evening clerk,

---

[5] Dr. Vu opined that Plaintiff could frequently perform both fine and gross manipulation bilaterally.  Tr. 105-06.

but only with limits to right-hand repetitive activity); Tr. 496-97 (ARNP Hughes opined that Plaintiff could seldom perform fingering or manipulative tasks); Tr. 396 (Mr. Franzen, a physical therapist, opined that Plaintiff could seldom perform fine manipulative tasks). Defendant asserts that the ALJ compared Plaintiff's allegations to the rest of the record and accounted for her limitations by restricting her to a range of light work with frequent, rather than constant, manipulation. ECF No. 16 at 4 (citing Tr. 60-65). Defendant's argument is not persuasive. Neither limiting Plaintiff to light work nor restricting her from constant manipulation addressed Plaintiff's limitation to occasional repetitive hand use. In assigning great weight to the opinion of Drs. Stump and McLaughlin, the ALJ indicated that these doctors performed a thorough examination of Plaintiff and their findings were consistent with the objective medical evidence and the testimony of Dr. Vu. Tr. 64. As noted *supra*, although Dr. Vu also found Plaintiff capable of performing work at a light exertional level, Dr. Vu opined that Plaintiff could frequently perform fine and gross manipulation. Tr. 105-06. The Court finds that the ALJ erred by failing to include the credited occasional hand use limitation in the RFC or providing specific and legitimate reasons for rejecting the occasional hand use limitation opined by Drs. Stump and McLaughlin.

However, this error is harmless. The harmless error analysis may be applied where even a treating source's opinion is disregarded without comment. *Marsh v.*

*Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). An error is harmful unless the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, he vocational expert also testified that, even with a limitation to only occasional fine and gross manipulation, Plaintiff would be capable of performing other jobs existing in the national economy such as furniture rental consultant and counter clerk. Tr. 115-116. In her decision, the ALJ made alternative findings for step five of the sequential evaluation process, concluding that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Tr. 65-66. Based on this record, the Court can confidently conclude that the disability determination would remain the same were the RFC to incorporate the entirety of the credited opinion of Drs. Stump and McLaughlin.

### 3. ARNP Hughes and Mr. Franzen

On April 30, 2010, Plaintiff's treating nurse practitioner, Wendy Hughes, ARNP, noted that Plaintiff had decreased strength and decreased range of motion. Tr. 496. She reported that Plaintiff's computer use would be eliminated or minimal and she could seldom perform fingering or manipulative tasks. Tr. 496-97. ARNP Hughes was unsure as to whether Plaintiff could return to full-time work in the future, but noted that if she did, it would be at the sedentary level. Tr.

496-97.  On March 19, 2010, Keith Franzen, PT, performed a Physical Capacity

Examination of Plaintiff.  Tr. 390-409.  Mr. Franzen reported that Plaintiff

successfully passed 14 out of 15 validity criteria, indicating that she made a valid

test effort.  Tr. 391, 395.  He opined that Plaintiff could seldom perform fine

manipulative tasks.  Tr. 392, 396.  Mr. Franzen reported that Plaintiff was unable

to perform work at any exertional level, largely because she was limited by her

strength, endurance, and sensation in the hands and wrists.  Tr. 391.

The ALJ gave little weight to the opinions of ARNP Hughes and Mr.

Franzen.  Tr. 65.  Because ARNP Hughes and Mr. Franzen are "other sources," the

ALJ was required to provide germane reasons to discount their opinions.  *Dodrill*,

12 F.3d at 918-19.

The ALJ discounted the opinions of ARNP Hughes and Mr. Franzen

because they were inconsistent with the majority of medical sources in the record,

including the opinions of Drs. McLaughlin, Stump, James, Kopp, and the testifying

medical expert, Dr. Vu, to whose opinions the ALJ assigned great weight.  Tr. 64-

65.  Plaintiff argues that this was not a germane or even a valid reason to give less

weight to the opinions of ARNP Hughes and Mr. Franzen.  ECF No. 14 at 15.  An

ALJ may choose to give more weight to an opinion that is more consistent with the

evidence in the record.  20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent an

opinion is with the record as a whole, the more weight we will give to that

opinion."). Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 404.1527(c)(6) (assessing the extent to which a medical source is "familiar with the other information in [the claimant's] case record"). Drs. Stump, McLaughlin, James, and Kopp comprised two separate medical teams that evaluated Plaintiff and determined that she was able to perform light exertional level jobs with some restrictions. Dr. Vu reviewed the entire longitudinal record that was available at the time of the second hearing, up through Exhibit 12F. He opined that Plaintiff's medical records showed that she had no sensory deficit and equal grip bilaterally. Tr. 110 (citing Tr. 307). Contrary to these opinions, ARNP Hughes and Mr. Franzen predicted that Plaintiff could only engage in sedentary work with manipulative restrictions. Tr. 390-409, 496-97. Their opinions were inconsistent with the opinions of Drs. Stump, McLaughlin, James, Kopp, and Vu, who concluded that Plaintiff's hand restrictions were not debilitating. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. When resolving conflicts in the medical evidence, an ALJ is not obligated to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The opinions of

ARNP Hughes and Mr. Franzen are inconsistent with the majority of medical

sources in the record, including the opinions of Drs. McLaughlin, Stump, James,

Kopp, and Vu. This was a germane reason to discount ARNP Hughes and Mr.

Franzen's opinions.

### 4. Dr. Lin

On December 9, 2008, Plaintiff's treating surgeon, Henry Lin, M.D.,

examined Plaintiff and diagnosed her with bilateral carpal tunnel syndrome. Tr.

475-76. On January 23, 2009, Dr. Lin performed a right carpal tunnel release on

Plaintiff. Tr. 445. By June 30, 2009, Dr. Lin noted that Plaintiff had full range of

motion in her right hand, with remaining incisional tenderness and pillar pain. Tr.

448. On September 14, 2009, Dr. Lin performed a left carpal tunnel release on

Plaintiff. Tr. 451. In May 2009, Dr. Lin assessed Plaintiff and noted that her right-

hand surgical scar was slowly maturing, the scar was tender and slightly lumpy,

her wrist range-of-motion was limited, and she was recovering "slower than

average." Tr. 447. In a May 27, 2009 treatment note, Dr. Lin reported, "For now,

I agree that [Plaintiff] is currently unable to work, given her current right[-]hand

condition, as well as the advanced left CTS (unoperated)." Tr. 447. The ALJ did not address Dr. Lin's May 27, 2009 notation.

Plaintiff contends the failure to address Dr. Lin's May 27, 2009 statement was error. ECF No. 14 at 11. The Court agrees. The regulations provide that a statement by a medical source that a claimant is "unable to work" is not a medical opinion and is not due any special significance because the legal conclusion of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . "). The legal conclusion of disability is reserved exclusively to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *see also McLeod v. Astrue,* 640 F.3d 881, 884-85 (9th Cir. 2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate issue of disability."). Nevertheless, the ALJ is required to "carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *Holohan,* 246 F.3d at 1203 ("If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide 'specific and legitimate' reasons in order to reject the treating physician's opinion.").

The ALJ erred by failing to address Dr. Lin's statement that Plaintiff "is

currently unable to work, given her current right hand condition, as well as the

advanced left CTS (unoperated)." Tr. 447. However, any failure to mention this

evidence is harmless error since the opinion was of little value under the

regulations. *See Dutkiewicz v. Comm'r of Soc. Sec.*, 663 Fed.Appx. 430, 432 (6th

Cir. 2016) *cert. denied Dutkiewicz v. Berryhill*, 137 S.Ct. 1365 (2017) (The ALJ's

failure to explicitly consider Dr. Kolinski's opinion that Dutkiewicz was "unable to

work" was, at most, harmless error "because the ALJ indirectly rejected the

conclusion that Dutkiewicz was unable to work by reasonably explaining that the

majority of medical evidence, the nature of Dutkiewicz's treatment, and the other

medical opinions in the record showed that Dutkiewicz had the capacity to perform

a limited range of sedentary work."). Additionally, the May 27, 2009 treatment

note provided no assessment of Plaintiff's functioning for the ALJ to evaluate. *See*

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (An

ALJ may reject an opinion that does "not show how [a claimant's] symptoms

translate into specific functional deficits which preclude work activity."). While

the ALJ did not cite the specific notation within Dr. Lin's May 2009 treatment

note, the ALJ acknowledged in her decision that Dr. Lin treated Plaintiff's carpal

tunnel. Tr. 62. Further, in a notation within a subsequent treatment note from

February 2010, Dr. Lin did not report the same opinion as to Plaintiff's ability to

work, but instead noted that the best option would be for Plaintiff to schedule a

ORDER - 30

physical capacities evaluation and to work with a vocational rehabilitation service.

Tr. 457. Plaintiff has failed to meet her burden of establishing that she was harmed

by the ALJ's error. *Shinseki*, 556 U.S. at 409-10. The ALJ's error was

inconsequential to the ultimate nondisability determination, and a district court

"may not reverse an ALJ's decision on account of an error that is harmless."

*Molina,* 674 F.3d at 1111.

### D.     Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in

discrediting her symptom claims. ECF No. 14 at 20-21. An ALJ engages in a two-

step analysis to determine whether to discount a claimant's testimony regarding

subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must

determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The

claimant is not required to show that [the claimant's] impairment could reasonably

be expected to cause the severity of the symptom [the claimant] has alleged; [the

claimant] need only show that it could reasonably have caused some degree of the

symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 61.

### 1.  Lack of Supporting Medical Opinion Evidence

First, the ALJ found Plaintiff's symptom complaints were not supported by the medical opinion evidence.  Tr. 61.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).  Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor.  *Burch*, 400 F.3d at 680.

Here, the ALJ noted Plaintiff testified at her first hearing that she was "totally disabled" in both hands.  Tr. 61, 93.  Plaintiff asserts that the ALJ's

ORDER - 33

conclusion regarding Plaintiff's symptom claims was not supported by the record. ECF No. 14 at 20. However, in finding that "the medical evidence of record show[ed] that [Plaintiff] was not disabled under the regulations," the ALJ noted that the number of medical opinions in the record that determined Plaintiff remained capable of functioning at a light exertional level did not support Plaintiff's allegations. Tr. 61-63; *see, e.g.,* Tr. 487 (February 3, 2010: Plaintiff's physical therapist reported that her range of motion was within functional limits); Tr. 301-02 (August 20, 2010: Drs. Stump and McLaughlin reported that Plaintiff did not have a ratable impairment in the left upper extremity and that the basis for the decreased strength in her left hand was "likely perceived discomfort rather than neurological dysfunction); Tr. 304-05 (September 2010: Drs. Stump and McLaughlin opined that Plaintiff would be able to perform two of her previous light exertional level jobs, and specified a limitation to only occasional repetitive hand use for one of the jobs); Tr. 311, 317, 321 (September 2011: Drs. James and Kopp opined that Plaintiff could return to work at her light exertional level jobs with limitations in repetitive use of her right upper extremity); Tr. 105-06 (Dr. Vu testified that Plaintiff would be capable of performing work at a light exertional level). It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857.

ORDER - 34

The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Based on this record, the ALJ reasonably concluded that Plaintiff's allegations of complete disability were not supported by the medical evidence in the record. This finding is supported by substantial evidence.

### 2. *Lack of Objective Medical Evidence After Treatment*

Second, the ALJ found that the minimal objective medical evidence of impairment following Plaintiff's bilateral carpal tunnel releases and physical therapy did not support the degree and severity of Plaintiff's alleged symptoms. Tr. 61. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 856; *Bunnell*, 947 F.2d at 346-47; *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Medical evidence is a relevant factor, however, in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2). Minimal objective evidence is a factor

ORDER - 35

which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680.

The ALJ noted that Plaintiff reported her right hand was mostly numb. Tr. 61, 109-10, 116. The ALJ then provided a detailed summary of Plaintiff's medical records in her decision and specifically remarked that the objective medical evidence showed a steady increase in functioning following Plaintiff's bilateral carpal tunnel releases. Tr. 61-65. The ALJ gave great weight to the opinion of Dr. Vu, noting that he reviewed the longitudinal record and concluded that the evidence was inconsistent with a disabling impairment. Tr. 63-64. Plaintiff asserts that the ALJ failed to fully develop the record, and thus, "[i]t is counterintuitive the ALJ should fail to fulfill her own affirmative duty and then discredit [Plaintiff] on this same basis." ECF No. 14 at 20. As discussed *supra*, this argument is without merit as the ALJ fulfilled her duty to fully and fairly develop the record. Further, the ALJ's reasons are supported by substantial evidence and together constitute a sufficient basis for discounting Plaintiff's allegations of disability. As noted above, credibility determinations are within the province of the ALJ's responsibilities and it is not the reviewing court's role to disturb that determination unless it appears the ALJ arbitrarily discredited Plaintiff's symptom claims. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Where, as here, the ALJ has made specific findings justifying a decision to discredit Plaintiff's testimony

regarding debilitating symptoms, and those findings are supported by substantial evidence, the Court's role is not to second-guess that decision.

### 3. Daily Activities

Third, the ALJ found Plaintiff's daily activities were inconsistent with the level of impairment Plaintiff alleged. Tr. 61. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ noted Plaintiff alleged that she could perform basic chores as long as they were not excessively repetitive. Tr. 61, 228. The ALJ then summarized Plaintiff's activities of daily living, which included weeding, watering plants, folding laundry, dusting, and preparing food. Tr. 61. The ALJ also noted that Plaintiff reported she could spend up to an hour weeding or doing her laundry.

ORDER - 37

Tr. 61, 229.  The ALJ's finding that Plaintiff's daily activities were inconsistent with her specific alleged limitations is supported by substantial evidence.

### 4.  Exaggerated Symptoms

The ALJ observed that evidence in the record showed Plaintiff exhibited symptom exaggeration behavior.  Tr. 61.  The tendency to exaggerate provided a permissible reason for discounting Plaintiff's credibility.  *See Tonapetyan*, 242 F.3d at 1148 (the ALJ appropriately considered Plaintiff's tendency to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work.).  Here, the ALJ observed that Plaintiff's September 9, 2011 examination revealed that Plaintiff's description of symptoms in her left elbow did not match anatomical findings.  Tr. 61, 310.  The ALJ also noted that the medical evaluator reported that Plaintiff had "symptom magnification in both upper extremities."  Tr. 61 (citing Tr. 310).  The ALJ reasonably concluded that this evidence of Plaintiff magnifying her symptoms undermined Plaintiff's subjective symptom reporting.  Tr. 61.  The ALJ reasonably relied on this evidence in evaluating Plaintiff's symptom complaints.

## E.  Lay Opinion Evidence

Plaintiff challenges the ALJ's rejection of the lay witness statements of her

daughter, Ms. Sara Deveny.[6]  ECF No. 14 at 12.  An ALJ must consider the

testimony of lay witnesses in determining whether a claimant is disabled.  *Stout*,

454 F.3d at 1053.  If the ALJ gives germane reasons for rejecting testimony by one

witness, the ALJ need only point to those reasons when rejecting similar testimony

by a different witness.  *Molina*, 674 F.3d at 1114; *see Valentine v. Comm'r of Soc.

Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because the ALJ

provided clear and convincing reasons for rejecting the claimant's own subjective

complaints, and because the lay witness's testimony was similar to such

---

[6] In her opening brief, Plaintiff argues that the ALJ erred by failing to address

letters submitted by Ms. Deveny and Ms. Jennifer Harrington.  ECF No. 14 at 11-

12 (citing Tr. 291-92).  However, as noted by Defendant and agreed to by Plaintiff

in her reply brief, the ALJ did not have these letters to review as Ms. Deveny's and

Ms. Harrington's letters were added at the Appeals Council level.  ECF No. 16 at

13; ECF No. 17 at 6-7, n. 2; Tr. 44, 291-92.  Plaintiff notes that, although these two

letters are in the Appeals Council exhibit list, there is no mention of the letters in

"Additional Evidence."  ECF No. 17 at 6-7, n. 2 (citing Tr. 42, 44).

complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony). The ALJ may reject lay opinion testimony that essentially reproduces the claimant's discredited testimony. *See Valentine*, 574 F.3d at 694.

Here, Plaintiff argues the ALJ improperly rejected Ms. Deveny's statements because the reasons given for rejecting Plaintiff's testimony were not valid. ECF No. 17 at 10-11. The ALJ considered a third-party function report dated April 2014 from Ms. Deveny and assigned little weight to her statements because they generally reflected Plaintiff's allegations which, as discussed *supra*, were inconsistent with the opinions from medical professionals and with Plaintiff's activities of daily living. Tr. 61. Ms. Deveny noted that Plaintiff had trouble with lifting. *Compare* Tr. 252 *with* Tr. 228 (Plaintiff reported she was able to do household chores that did not involve anything heavy). Ms. Deveny noted that Plaintiff was only able to drive short distances and she had to take breaks often. *Compare* Tr. 250 *with* Tr. 230 (Plaintiff stated, "I can't drive but 30 miles and have to stop and give both my hands a rest"). Ms. Deveny reported that Plaintiff was able to do light cleaning, water her plants, and use the blower. *Compare* Tr. 252 *with* Tr. 229 (Plaintiff reported that she was able to do laundry and some weeding). As discussed *supra*, the ALJ properly rejected Plaintiff's symptom testimony for multiple clear and convincing reasons. The ALJ accurately found that Ms. Deveny's lay opinion reflected the same allegations made by Plaintiff. Because

these statements are similar to Plaintiff's symptom testimony, and the ALJ

properly discredited Plaintiff's symptom testimony for several clear and

convincing reasons, the ALJ needed only point to the same reasons to discredit

these lay statements. *Molina*, 674 F.3d at 1114; *Valentine*, 574 F.3d at 694. The

ALJ did not err in rejecting Ms. Deveny's lay opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to **substitute Andrew M. Saul as the Defendant and update the docket sheet**.

2. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

3. Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

4. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to

counsel, and **CLOSE THE FILE.**

DATED July 30, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 41